George MOORE, Plaintiff,

v.

AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant and Third-Party Plaintiff,

v.

BATH IRON WORKS, INC., and Over-beke-Kain Company, Third-Party Defendants.

Juan Antonio SURILLO, Plaintiff,

v.

AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant and Third-Party Plaintiff,

v.

BATH IRON WORKS, INC., and Over-beke-Kain Company, Third-Party Defendants.

Antonio GARAY, Plaintiff,

v.

AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant and Third-Party Plaintiff,

v.

BATH IRON WORKS, INC., and Over-beke-Kain Company, Third-Party Defendants.

Lula W. CROSIER, Administratrix of the Estate of Gilbert W. White, Deceased, Plaintiff,

v.

AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant and Third-Party Plaintiff,

v.

BATH IRON WORKS, INC., and Over-beke-Kain Company, Third-Party Defendants.

Nos. 69 Civ. 2945, 69 Civ. 3679, 69 Civ. 4524, 70 Civ. 165.

United States District Court, S. D. New York.

Jan. 18, 1972.

Zepnick & Director, New York City, for third-party defendant Overbeke.

Haight, Gardner, Poor & Havens, New York City, for defendant and third-party plaintiff.

Rolnick, Tabak, Ezratty & Huttner, Joseph Messina, New York City, for third-party defendant Bath Iron Works, Inc.

## MEMORANDUM and ORDER

BRIEANT, District Judge.

One White, the intestate of plaintiff Crosier, was killed and the other plaintiffs in these actions were injured aboard the S.S. "C.V. LIGHTNING" on May 14, 1969 in Amsterdam harbor, when a fairlead roller on the vessel failed and a portion of this article of ship's gear was propelled violently across the deck. The vessel was built by third-party defendant, Bath Iron Works, Inc. ("Bath"), and the fairlead roller was supplied to Bath by third-party defendant and movant here, Overbeke-Kain Company ("Overbeke"). Welding fabrication on the device was done by Mentor Products, Inc., of Mentor, Ohio ("Mentor").

Third-party defendant Overbeke now moves to vacate two *ex parte* orders of this Court made by the undersigned Judge on November 9 and 19, 1971. Such orders were entered on consent of the other parties to the action. The first order authorized attachment by the defendant and third-party plaintiff of property of third-party defendant Overbeke in this District, in the form of the contractual obligation to defend and indemnify Overbeke, pursuant to a product liability insurance policy issued by Home Insurance Company, 59 Maiden Lane, New York City, so that Overbeke could be impleaded. Thereafter, on November 19, 1971, that order was amended *nunc pro tunc* to provide for a waiver of Rule 9(*l*) of the General Rules of the United States District Court for this District, which requires that an order of a Part I Judge be obtained after a case reaches the permanent calendar, before a motion for leave to implead a third-party defendant may be heard.

Defendant and third-party plaintiff American Export Isbrandtsen Lines, Inc., filed answers to the complaints in these actions on March 13, 1970. Immediately thereafter on March 23, 1970, defendant filed a third-party summons and complaint against Bath and Overbeke. Bath has appeared and answered.

The initial third-party summons and complaint was served upon Overbeke in 1970 on the theory that it was doing business in New York, and personal service was effected on the Secretary of its independent New York sales agent.

On October 16, 1970, a motion to dismiss the initial third-party summons and complaint against Overbeke and the cross-complaint which had been filed by Bath against Overbeke was made in this Court based on claimed lack of jurisdiction, in that Overbeke did not do business in New York and had no contacts in New York sufficient to sustain *in personam* jurisdiction. The fairlead roller was manufactured in Ohio and delivered to Bath in Maine and as heretofore noted, the accident happened in the Netherlands.

This motion to dismiss on jurisdictional grounds made by Overbeke was not disposed of until April 26, 1971, at which time Judge Lasker of this Court determined that there was no basis for *in personam* jurisdiction with respect to Overbeke and dismissed the initial pleadings. Plaintiff's note of issue was filed May 27, 1971. On July 16, 1971, a notice of assignment and pre-trial conference was issued.

Prior to November 9, 1971, defendant apparently concluded that it could obtain *quasi in rem* jurisdiction over this defendant, under the doctrine of Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966). The lapse of time between the application for the *ex parte* order of attachment on November 9, 1971 and the denial of *in personam* jurisdiction, originally asserted on March 23, 1970, attacked by Overbeke on October 16, 1970, and not disposed of until April 26, 1971, was more than six but less than seven months.

■ Although the relief granted on November 9, 1971 was the result of an *ex parte* application, it does not appear that the relief was improvidently grant-

ed. The actions arise out of the same accident and all of the purposes of Rule 14(a) will be served by disposing of the rights of the shipowner against Bath and its rights against its supplier, Overbeke, in the same action.

The impleader is no surprise to defendant Overbeke. It was initially impleaded, apparently without a proper jurisdictional basis, as long ago as March 23, 1970 and the theory of the third-party summons and complaint now being founded upon the attachment is the same as the theory of the prior ineffective impleader. See Lyons v. Marrud, Inc., 46 F.R.D. 451, 453 (S.D.N.Y.1968 —Mansfield, J.); Dery v. Wyer, 265 F. 2d 804 (2nd Cir. 1959); 3 Moore's Federal Practice § 14.04.

■ Defendant and third-party plaintiff excuses its failure to move to bring in a third-party defendant within six months from the date of service as required by Rule 16 of the Civil Rules of the United States District Court for the Southern District of New York by showing the peculiar and unusual circumstances of the case. Such circumstances include the apparent close question of *in personam* jurisdiction, which occupied the attention of this Court for more than thirteen months. The precise date is not stated, when defendant and third-party plaintiff first learned of the existence of the "property" of Overbeke in this District in the form of a products liability insurance policy issued by a New York company. It is implied at p. 5 of the affidavit of Hollis M. Walker, Jr. that this was shortly prior to the order of attachment dated November 9, 1971. The existence of such a property right in New York would be within the continuing knowledge of Overbeke. It would not necessarily be known to defendant and third-party plaintiff, unless ascertained by chance or by discrete inquiry. Mr. Walker's affidavit states:

"Defendant and third-party plaintiff learned that Overbeke-Kain Company has property in the form of a product liability insurance policy with the Home Insurance Company, 59 Maiden Lane, New York, New York. *Thereafter* defendant, and third-party plaintiff obtained an order . . . to attach said insurance policy to obtain *quasi in rem* jurisdiction over Overbeke-Kain Company and to secure any judgment awarded to it against Overbeke."

(Italics added.)

There is no showing that third-party plaintiff effected any deliberate delay, as was found in Goldstein v. Compudyne Corp., D.C., 45 F.R.D. 467. Overbeke successfully delayed these proceedings by objecting to *in personam* jurisdiction, during a time when it knew or should have known where its policy right of products liability insurance was located, and that defendant, once it became apprised of all the facts, would be entitled to assert *in rem* jurisdiction by attachment. There is no showing that the third-party plaintiff was derelict, and no prejudice will result to Overbeke under the particular circumstances of this case.

■ It is also claimed that a Judge sitting in the Motion Part of this Court lacks power "which authorizes the bypassing of a Part I Judge", (affidavit of Gilbert J. Fortgang sworn to December 13, 1971). Neither is there any requirement or rule of law or decision which indicates that the local Rules of Civil Procedure cannot be waived in the interests of substantial justice. In fact, the rule is otherwise. American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 539, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1969).

■ While the uniform enforcement of practice rules and the interests of maintaining an orderly trial calendar are important matters of policy, their importance does not transcend the importance of encouraging impleader and the full disposition of controversies.

The persons aggrieved under the practice rule would be those presently parties to the litigation, because they may be delayed. Those parties do not oppose the impleader. It is them, and the expeditious disposition of controversies, that the practice rule seeks to protect.

 It is urged as an additional and separate ground for setting aside the orders above referred to as improvidently granted that Overbeke, if liable to Bath, has a claim against a fourth-party defendant Mentor Products, Inc. and that, fortuitously, Mentor Products does business only in Ohio and no jurisdiction can be obtained over it in this Court. Overbeke, however, may "vouch in" its supplier Mentor by giving it notice of the litigation and requiring it to defend the soundness of its weldments made on the fairlead roller. If Mentor responds to this vouching in, the issues between Overbeke and Mentor will be disposed of in this action and if it does not, the disposition of the issues between Overbeke and its supplier in the Courts of Ohio will be relatively simple. West Indian Company v. S.S. Empress of Canada, 277 F.Supp. 1 (S.D.N.Y.1967); Moore's Federal Practice ¶ 0.405(9).

To assert the unavailability in this jurisdiction of Mentor for process, (although for all that appears Mentor may also be insured in New York) is to set forth an argument which if followed to its logical conclusions would prevent the assembler of a manufactured product from ever pursuing his rights against the manufacturers of his components. Possibly Mentor could, for example, claim that the welding electrodes it used were defective, and the manufacturer of the electrodes in turn may complain of the quality of the constituent metals. Clearly some point must be reached where such factors may not exert any weight in a controversy concerning jurisdiction or forum. Overbeke's motion to vacate the orders of November 9 and 19, 1971 is denied.

The alternative relief requested by movant, that these cases be transferred to the District Court in Ohio for trial must likewise be denied. The convenience of witnesses employed by parties, and expert witnesses as to metallurgy and methods of making welds should not be a basis for the transfer of the case. The distance between New York and Ohio in this day and age is not so conclusive as to the convenience of a party or a retained expert. The cases are pending here. They may be tried promptly and this should be done. Defendant shipowner will be under a great handicap if forced to defend this action without the participation and support of the manufacturer of the fairlead roller.

So ordered.